**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

EBONEE FRANCOIS                                    CIVIL ACTION

VERSUS                                             24-781-SDD-EWD

RACETRAC INC., *ET AL.*

**<u>RULING</u>**

This matter is before the Court on the Motion for Summary Judgment[1] filed by Defendants RaceTrac, Inc. ("RaceTrac") and Starr Indemnity and Liability Company ("Starr") (collectively, "Defendants"). Plaintiff Ebonee Francois ("Plaintiff") filed an Opposition,[2] to which Defendants replied.[3]

For the reasons that follow, Defendants' motion is granted.

**I.    BACKGROUND**

Plaintiff filed an original Petition for Damages against Defendants in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.[4] Plaintiff alleges bodily injury due to a slip and fall on August 15, 2023, at a RaceTrac convenience store.[5] Defendants removed under this Court's diversity jurisdiction.[6]

Plaintiff claims she entered the RaceTrac, traversed the store, and slipped and fell as a result of a puddle of water in the aisle, which allegedly was leaking from a cooler

---

[1] Rec. Doc. 12.
[2] Rec. Doc. 13.
[3] Rec. Docs. 14; 15.
[4] Rec. Doc. 1-3.
[5] *Id.* at ¶¶2-3.
[6] Rec. Docs. 1; 5. Plaintiff is a citizen of Louisiana. Rec. Doc. 1 at p. 2. Race Trac is a citizen of Georgia. *Id.* Starr is a citizen of Texas and New York. *Id.* Plaintiff admits that the alleged amount in controversy exceeds $75,000. Rec. Docs. 1 at p. 2; 5 at p. 2.

prior to the incident.[7] Plaintiff asserts she learned from an employee that the leak was an ongoing problem that had been reported to corporate headquarters.[8] She alleges that RaceTrac created an unreasonable risk of harm, failed to maintain its cooler, had actual or constructive notice of the dangerous condition, failed to take reasonable measures to remedy the condition, and failed to prevent the leaking cooler from creating an unreasonably dangerous condition.[9]

Defendants now seek summary judgment based on Plaintiff's inability to establish the essential elements of Louisiana's Merchant Liability Statute, La. R.S. 9:2800.6, *et seq*.[10] Defendants contend that RaceTrac warned of the existence of the allegedly unreasonably dangerous condition – the wet floor – with three unobstructed warning signs, thereby making it an "open and obvious" condition.[11] Defendants further argue that RaceTrac exercised reasonable care in its clean-up and in warning patrons of the condition.[12] Plaintiff opposes, arguing that genuine issues of material fact remain as to whether the condition constituted an unreasonable risk of harm and whether Defendants lacked reasonable care in keeping a leaking cooler operational and the aisles open.[13]

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment

---

[7] Rec. Doc. 1-3 at ¶3.
[8] *Id.* at ¶4.
[9] *Id.* at ¶6.
[10] Rec. Doc. 12-1 at p. 7 (citing La. R.S. 9:2800.6).
[11] *Id.* at p. 1; Rec. Doc. 14 at pp. 5-7.
[12] Rec. Doc. 12-1 at pp. 10-15.
[13] Rec. Doc. 13.

as a matter of law.[14] This determination is made "in the light most favorable to the opposing party."[15] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[16] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[17] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[18]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[19] All reasonable factual inferences are drawn in favor of the nonmoving party.[20] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[21] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment."[22]

---

[14] Fed. R. Civ. P.. 56(a).

[15] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 Moore, Fed. Prac. 56.15(3) (2d ed. 1966)).

[16] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).

[17] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

[18] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

[19] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).

[20] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[21] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998)).

[22] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).

### B.    Louisiana's Merchant Liability Statute

Because this is a diversity action, state law controls.[23] "Louisiana's Merchant Liability Statute, La. R.S. 9:2800.6, *et seq.*, [ ] governs negligence claims arising from a fall due to a condition on a merchant's premises."[24] The statute provides that "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage."[25] The statute also specifies the requirements for a merchant liability claim as follows:

> (B) In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action,[26] all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.[27]

---

[23] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[24] *Expose v. Rouses Enter., LLC*, 2023-0587 (La. App. 4 Cir. 5/7/24), 401 So.3d 117, 123.
[25] La. R.S. 9:2800.6(A).
[26] "Though there is some overlapping, these remaining elements are duty, breach, cause in fact, risk and harm within the scope of duty, and actual damages." *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So. 2d 1081, 1084, n.3.
[27] La. R.S. 9:2800.6(B).

It is undisputed that, to survive summary judgment, Plaintiff must submit evidence sufficient to preclude summary judgment on all three elements under Louisiana's Merchant Liability Statute.[28]  The United States Court of Appeals for the Fifth Circuit observes that the statute "'places a heavy burden of proof on plaintiffs' in slip and fall cases."[29] Because Plaintiff must prove all three additional elements of La. R.S. 9:2800.6(B), "the failure to prove any is fatal to the claimant's cause of action."[30] This burden of proof never shifts to the defendant.[31]

### C.    Defendants are entitled to summary judgment.

Defendants assert that Plaintiff cannot establish multiple essential elements to support her slip and fall claim under La. R.S. 9:2800.6(B).[32] Defendants submit in support: (1) Plaintiff's deposition transcript and exhibits (still images from store surveillance video);[33] (2) former RaceTrac shift manager Lashay Wilson's ("Wilson's") deposition transcript;[34] and (3) the Affidavit of RaceTrac General Liability Specialist Jordan Romeo ("Romeo").[35] Defendants contend the undisputed evidence shows that: (1) in response to a leak, RaceTrac placed multiple yellow caution signs in the vicinity of a suspected wet area from condensation from a refrigerator; (2) video evidence, along with Plaintiff's testimony, show Plaintiff walked past multiple yellow caution signs on her path to the drink machines, before allegedly slipping and falling on a wet floor, right after recognizing the

---

[28] Rec. Doc. 13 at p. 5.
[29] *Bagley v. Albertson's, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007) (quoting *Jones v. Brookshire Grocery Co.*, 847 So. 2d 43, 48 (La. App. 2 Cir. 2003)).
[30] *White*, 699 So. 2d at 1086; *see also Bertaut v. Corral Gulfsouth, Inc.*, 16-93 (La. App. 5 Cir. 12/21/16), 209 So. 3d 352, 356.
[31] *Ferrant v. Lowe's Home Ctrs., Inc.*, 494 F. App'x. 458, 460 (5th Cir. 2012) (citing *Melancon v. Popeye's Famous Fried Chicken*, 59 So.3d 513, 515 (La. App. 3 Cir. 2011) (citing *White*, 699 So. 2d at 1081)).
[32] Rec. Doc. 12-1 at pp. 1, 15.
[33] Rec. Doc. 12-4.
[34] Rec. Doc. 12-5.
[35] Rec. Doc. 12-6.

last one as a warning sign but stepping around it.[36] Thus, Defendants assert Plaintiff cannot establish her heavy burden under La. R.S. 9:2800.6(B) as she cannot show that the allegedly wet floor represented an unreasonably dangerous condition or that RaceTrac failed to exercise reasonable care when it placed the signage after mopping.[37]

Based on a review of the record, the following facts are deemed as uncontroverted, unless otherwise indicated.[38]

This litigation arises out of a slip and fall at the RaceTrac store at 8940 Greenwell Springs Road in Baton Rouge on August 15, 2023.[39] Plaintiff lost her footing while walking around a "wet floor" sign that she had recently seen.[40] The store video shows Plaintiff,

---

[36] Rec. Doc. 12-1 at p. 1.

[37] *Id.* at p. 15.

[38] Plaintiff states the basic facts are not disputed. Rec. Doc. 13 at p. 1. Plaintiff admits most of the Defendants' Statement of Uncontested Facts. Rec. Doc. 13-1. Plaintiff also responds with her own Statement of Uncontested Facts (Rec. Doc. 13-2 at pp. 1-4), some of which Defendants admit (Rec. Doc. 15 at pp. 1-4) and are included herein as undisputed.

[39] Rec. Docs. 12-2 at ¶1 (citing Rec. Doc. 1-3 at ¶2); 13-1 at ¶1.

[40] It is undisputed that Plaintiff slipped and fell.  Rec. Docs. 12-2 at ¶¶1-2, 9; 13-1 at ¶2; 13-2 at ¶¶2-5. Defendants submit Plaintiff's testimony where she stated, "I see this wet floor sign, I do like this, and as I walk around the wet floor sign, I lose my feet, and I slip and fall." Rec. Doc. 12-2 at ¶2 (citing Rec. Doc. 12-4 at p. 48). This is supported by the still images of the video surveillance. Rec. Doc. 12-4 at pp. 10. Plaintiff makes a qualified denial as written based on the definition of "vicinity" and the timing of the fall after walking past the sign. Rec. Doc. 13-1 at ¶2 (citing Rec. Doc. 12-4 at pp. 81-82). Plaintiff's counsel objected to the form of the question that Plaintiff slipped and fell generally in the "vicinity" of the "wet floor" sign. *Id.* Plaintiff responded, "yes" to the question. *Id.* Plaintiff's own Statement of Uncontested Facts establishes that she approached the third "wet floor" sign, paused and walked around it, and slipped after getting a cup from the beverage center. Rec. Doc. 13-2 at ¶¶1-5.

Review of the still images of the video surveillance shows Plaintiff paused at 8:36:55 a.m. to observe the third "wet floor" sign in her path on the way to the beverage center. Rec. Doc. 12-4 at p. 106. By 8:37:00 a.m., she had a cup in her hand, standing in front of the beverage center. *Id.* at p. 108. Two seconds later at 8:37:02 a.m., she had turned back toward the that same third "wet floor" sign she paused to observe. *Id.* at pp. 109, 110. And it is undisputed this sign is unobscured to anyone approaching the drink machine in the path used by Plaintiff. Rec. Doc. 13-1 at ¶6. At 8:37:05 a.m., the video surveillance depicts Plaintiff on the ground with a cup in her hand in front of the beverage center. Rec. Doc. 12-4 at p. 111. Plaintiff's testimony regarding the presence of the "wet floor" signs in the area where she fell is inconsistent with that which is clearly evident in the still images. Still images of the video surveillance show Plaintiff pointing to the third "wet floor" sign after falling. Rec. Doc. 12-4 at p. 113.

Additionally, Plaintiff admittedly testified she saw a puddle of water under the third "wet floor" sign. Rec. Doc. 13-2 at pp. 67-69. She also testified that Exhibit 13 depicts her pointing to a wet spot essentially between the two "wet floor" signs. Rec. Doc. 12-4 at p. 67. She later testified she saw water under the third "wet floor" sign.  Rec. Doc. 12-4 at pp. 76-77. The evidence and arguments relied on by Plaintiff are insufficient to create a disputed issue of material fact for trial, as it does not contradict Defendants' assertion. Based on the record evidence, the Court deems this fact admitted.

who was pregnant at the time, walking into the store at 8:36 a.m., and walking past a yellow "wet floor" sign near the front of the store and several feet to her left.[41] She then veered somewhat to her right, walking through a passageway between a large pizza display on her left a display of hot dogs on her right, with another yellow sign directly in front of Plaintiff, next to and near the far end of the hot dog stand.[42] Plaintiff saw this second sign but did not pause for it because she did not see any water near it.[43]

Plaintiff then veered to her left to go around a display of chips on her way to the drink fountains to get a cup for her coffee ice.[44] A third yellow sign is shown in front of Plaintiff and in her path at the end of the display of chips.[45] That sign is right in the path of anyone approaching the drink machine from that side of the chips display, it is unobscured, and there is a mop and bucket a few feet behind and to the left of the sign.[46] Plaintiff specifically paused to look at this sign because she could see some accumulated water under it, though she denied seeing the mop bucket.[47] Plaintiff testified the accumulated water she saw was the size of a "small plate."[48] She knew that the sign was

---

[41] Rec. Docs.12-2 at ¶3 (citing Rec. Doc. 12-4 at pp. 50-51, 72, 12-4 at p. 102); 13-1 at ¶3.

[42] Rec. Docs. 12-2 at ¶4 (citing Rec. Doc. 12-4 at pp. 55-57, 59-60, 72-74, 77, 12-4 at pp. 104-05); 13-1 at ¶4.

[43] Rec. Docs. 12-2 at ¶5 (citing Rec. Doc. 12-4 at pp. 60, 73); 13-1 at ¶¶1,5. Plaintiff submits in her own alleged uncontested facts that she entered the store and passed two "wet floor" signs with no adjacent water on the floor. Rec. Doc. 13-2 at ¶1 (citing Rec. Doc. 12-4 at p. 58, 102, 105). Defendants deny this fact as written, admitting that Plaintiff testified she did not see water next to the first two signs. Rec. Doc. 15 at ¶1 (citing Rec. Doc. 12-4 at p. 58). The Court finds it is undisputed, however, that the Plaintiff did not see water next to the first two signs upon entering the store. Rec. Docs. 12-2 at ¶¶3-7; 13-1 at ¶¶3-7; 13-2 at ¶1; 15 at ¶1; 12-4 at pp. 50-61.

[44] Rec. Docs. 12-2 at ¶6 (citing Rec. Doc. 12-4 at pp. 48, 60); 13-1 at ¶6.

[45] Rec. Docs. 12-2 at ¶6 (citing Rec. Doc. 12-4 at pp. 57-61, 73, 77, 78, 82, 12-4 at p. 106); 13-1 at ¶6.

[46] Rec. Docs. 12-2 at ¶6; 13-1 at ¶6.

[47] Rec. Docs. 12-2 at ¶7 (citing Rec. Doc. 12-4 at pp. 61, 74); 13-1 at ¶7.

[48] Rec. Doc. 13-2 at ¶4 (citing Rec. Doc. 12-4 at p. 69). Defendant does not dispute that this is Plaintiff's testimony. Rec. Doc. 15 at ¶4 (citing Rec. Doc. 12-4 at p. 69).

a warning about wet floors.[49] Plaintiff walked around the third "wet floor" sign after pausing.[50]

Within the next five seconds, Plaintiff had walked past that third sign to the fountain area and grabbed a cup.[51] The puddled water was between the sign near the hot dog stand and the sign behind the chips.[52] Three seconds later, she had turned back around and had fallen near the drink machines.[53] Plaintiff appears to have fallen within feet of that third sign was that she had encountered twice within the previous few seconds."[54]

---

[49] Rec. Docs. 12-2 at ¶7 (citing Rec. Doc. 12-4 at p. 54); 13-1 at ¶7.

[50] Rec. Docs. 13-2 at ¶¶2-3 (citing Rec. Docs. 12-4 at pp. 60, 106); 13-1 at ¶8; 15 at ¶¶2-3.

[51] Rec. Docs. 12-2 at ¶8 (citing Rec. Doc. 12-4 at pp. 62-65, 12-4 at p. 109); 13-1 at ¶8. Plaintiff makes a qualified denial as written but does not point to any record evidence refuting this fact, which is supported by the still images of the video surveillance. Rec. Doc. 13-1 at ¶8, n. 2. Thus, the Court deems this fact admitted.

[52] Rec. Docs. 12-2 at ¶8 (citing Rec. Doc. 12-4 at pp. 67-68); 13-1 at ¶8. Although Plaintiff admits that there was water under the "wet floor" sign (Rec. Doc. 13-1 at ¶8, n.2), she responds with a qualified denial as written, arguing that she also identified the reflection of water on the floor on the beverage aisle in Exhibits 10 and 11, which she argues is a "different aisle." Rec. Doc. 13-1 at ¶8, n. 2 (citing Rec. Doc. 12-4 at pp. 79-80, 111-12). Plaintiff further argues that Wilson testified that patrons had to walk through the area of the leak to get to the beverage center. *Id.* (citing Rec. Doc. 12-5 at p. 24). The cited testimony reflects Wilson responded "Yes, sir" when asked to confirm that his testimony is that "this piece of equipment was leaking in an area that peope[sic] had to traverse on a regular basis to get to the fountain/soda area of the store[.]" Rec. Doc. 12-5 at p. 24. However, Defendants undisputed fact, and supporting evidence, relates to the location of the puddled water relative to the third "wet floor" sign, as evidenced by still images of Plaintiff pointing to the third "wet floor" sign after falling. Rec. Doc. 12-4 at p. 113. Additionally, Plaintiff admittedly testified she saw a puddle of water under the third "wet floor" sign. Rec. Doc. 13-2 at pp. 67-69. She also testified that Exhibit 13 depicts her pointing to a wet spot essentially between the two "wet floor" signs. Rec. Doc. 12-4 at p. 67. She later testified she saw water under the third "wet floor" sign.  Rec. Doc. 12-4 at pp. 76-77. However, Plaintiff does not cite to record evidence controverting Defendants' assertion in the context in which it is submitted. Thus, the Court deems this supported fact as admitted relative to the third "wet floor" sign.

[53] Rec. Doc. 12-2 at ¶9 (citing Rec. Doc. 12-4 at pp. 63-64, 66, 77, 79, 81, 111). Plaintiff asserts a qualified denial as written but does not address this fact.  Thus, the Court deems this fact, supported by video images, as admitted.

[54] *Id.* Plaintiff makes a qualified denial as written, disputing Defendants' representation that Plaintiff fell "five feet or so" from the original "wet floor" sign. Rec. Doc. 13-1 at ¶9. Plaintiff points to Exhibits 5 and 10 of her deposition, arguing that Exhibit 5 shows the "wet floor" sign at least four, perhaps five, 12-inch by 12-inch tiles away from the beverage center. *Id.* (citing Rec. Doc. 12-4 at pp. 106, 111). Plaintiff argues she slipped three to four, 12-inch by 12-inch tiles, into the beverage center rendering the fall seven to nine feet from the "wet floor" sign. *Id.* However, in Plaintiff's Opposition, she asserts that a review of Exhibit 5 and Exhibit 10 show she fell between five to eight feet from the "wet floor" sign. Rec. Doc. 13 at p. 3, n. 21. Plaintiff points to no record evidence controverting the undisputed facts other than to refute the exact number of feet of Plaintiff's fall from the third "wet floor" sign depicted in Exhibit 5. Nevertheless, as noted, the parties' contentions and record evidence indicate the fall to be anywhere from five feet to nine feet from the third "wet floor" sign. No record evidence cited establishes the exact number of feet. However, the still images

The uncontested facts further show that Wilson is a former shift manager for RaceTrac.[55] Wilson testified that the "grab & go" refrigeration unit was actively leaking at the time of the subject accident.[56] Wilson testified that the leak was caused by condensation.[57] Wilson testified that RaceTrac "had constant problems with this machine leaking."[58] Wilson testified that the leak had been ongoing "for a couple of weeks. Maybe like a month or so."[59] The signs and mop bucket were out because of a leaking refrigerator near the pizza display that was awaiting repairs.[60] During the time leading up to Plaintiff's fall, the store followed its procedure by mopping the area and placing yellow "wet floor" caution signs where the leak was.[61] There were three routes to the beverage center.[62]

Wilson testified that it was common for people to walk through the area of the leak and, in his experience, customers sometimes track liquid into the area of the beverage center.[63] Wilson testified that there were multiple near miss slip events in the area of the

support that Plaintiff fell within a matter of feet from the third sign. Thus, these factual assertions are deemed admitted for purposes of this motion, except as to the exact distance of the fall from the third "wet floor" sign.

[55] Rec. Docs. 13-2 at ¶5 (citing Rec. Doc. 12--5 at pp. 8-9); 15 at ¶5.

[56] Rec. Docs. 13-2 at ¶6 (citing Rec. Doc. 12-5 at p. 20); 15 at ¶6.

[57] Rec. Docs. 13-2 at ¶7 (citing Rec. Doc. 12-5 at p. 19); 15 at ¶7.

[58] Rec. Docs. 13-2 at ¶8 (citing Rec. Doc. 12-5 at p. 19); 15 at ¶8.

[59] Rec. Docs. 13-2 at ¶9 (citing Rec. Doc. 12-5 at p. 20); 15 at ¶9.

[60] Rec. Docs. 12-2 at ¶10 (citing Rec. Doc.12-5 at pp. 19-21); 13-1 at ¶10.

[61] Rec. Docs. 13-2 at ¶11 (citing Rec. Doc. 12-5 at p. 55); 13-1 at ¶11.

[62] Rec. Docs. 13-2 at ¶13 (citing Rec. Doc. 12-5 at p. 36); 15 at ¶13. Plaintiffs submit that it is undisputed that, "this ongoing leak was located in the most direct path for patrons to traverse to reach the beverage center of the store." Rec. Doc. 13-2 at ¶12 (citing Rec. Doc. 12-5 at p. 24). Defendants qualify their response stating that the "most direct path" to the beverage center area depends on one's point of origination. Rec. Doc. 15 at ¶12 (citing Rec. Doc. 12-2). A review of the evidence does not support Plaintiff's characterization of the testimony and evidence as the leak being in the "most direct path" of any patrons traversing to the beverage area. Thus, the Court deems this a disputed fact.

[63] Rec. Docs. 13-2 at ¶15 (citing Rec. Doc. 12-5 at p. 35); 15 at ¶15. Plaintiffs submit Wilson's statement as an uncontested fact that it "was common for people to walk through the area of the leak and track water into the beverage center." Rec. Doc. 13-2 at ¶15. However, Defendants qualify their response, arguing that Wilson did not testify that people "tracked water" into the beverage area, though she did testify that they walked through the leak area. Rec. Doc. 15 at ¶15. The testimony referenced by Plaintiff states that Wilson agreed that it was common for people to walk through the area where the leak was occurring to get to the beverage center, and that, he agreed in his experience that customers sometimes track additional liquid into the area. Rec. Doc. 12-5 at p. 35. Thus, the Court deems this testimony as undisputed.

water leak prior to Plaintiff's fall.[64] She also testified that the near miss slip events occurred despite the store policy of mopping the ongoing spill and putting out "wet floor" signs.[65] The "grab and go" refrigeration unit was not taken out of service."[66] RaceTrac employees were instructed to put out wet floor signs and mop.[67] RaceTrac did not block the aisle where the leak was located.[68]

The parties focus their arguments on the first and third elements of La. R.S. 9:2800.6(B).[69] Thus, the only issues before the Court are whether Plaintiff encountered

---

[64] Rec. Doc. 13-2 at ¶16 (citing Rec. Doc. 12-5 at pp. 51-52); 15 at ¶16. Defendants qualify their response, admitting that Wilson testified to that, but RaceTrac cannot confirm that "near miss slip events" occurred. Rec. Doc. 15 at ¶16.

[65] Rec. Doc. 13-2 at ¶17 (citing Rec. Doc. 12-5 at p. 52); 15 at ¶17. Defendants qualify their response on the basis that they cannot confirm that "near miss" slip events occurred. Rec. Doc. 15 at ¶17. However, Defendants do not dispute that this is Wilson's testimony.

[66] Rec. Docs. 13-2 at ¶10 (citing Rec. Doc. 12-5 at pp. 21-22); 15 at ¶10. Plaintiff submits it is undisputed that, "Despite the ongoing leak, the 'grab and go' refrigeration unit was not taken out of service." Rec. Doc. 13-2 at ¶10. Defendants qualify their response as to the fact that it is uncontested that the leak was "ongoing," as RaceTrac disagrees with Wilson's characterization of the leak in his testimony. Rec. Doc. 15 at ¶10. Defendant does not address the asserted fact that the unit was not taken out of service; thus, to that extent this fact is deemed admitted. However, Defendants point to Romeo's affidavit attesting that the condensation issue was reported on July 19, 2023 and fixed the next day and another issue was reported on August 14, 2023 and fixed the following day – the day of Plaintiff's accident. Id. (citing Rec. Doc. 12-6 at ¶¶3, 4). Because the "ongoing" nature of the leak is disputed by record evidence, the Court does not deem admitted the fact as written.

[67] Rec. Docs. 13-2 at ¶11 (citing Rec. Doc. 12-5 at p. 22); 15 at ¶11. Plaintiff submits that it is undisputed that, "Instead, RaceTrac employees were instructed to put out wet floor signs and mop." Rec. Doc. 13-2 at ¶11. Defendants qualify their response, presumably taking issue with Plaintiff's insertion of "[i]nstead," and point to Romeo's affidavit that, in response to the issue, RaceTrac also placed a service call and had the problem repaired. Rec. Doc. 15 at ¶11 (citing Rec. Doc. 12-6 at ¶¶3-4). This evidence, along with Wilson's testimony, supports Defendants' contention. Thus, the Court deems admitted only the fact that RaceTrac employees were instructed to put out wet floor signs and mop.

[68] Rec. Docs. 13-2 at ¶14 (citing Rec. Doc. 12-5 at pp. 36-37); 15 at ¶14. Plaintiff submits it is undisputed that, "RaceTrac did not block off aisle wherein the ongoing leak was located." Rec. Doc. 13-2 at ¶14. However, for the same reason previously stated, the Court does not admit the fact that the leak was "ongoing." However, Defendants do not point to record evidence disputing that RaceTrac did not block the aisle where the leak was located. Thus, the Court deems this portion of the fact admitted.

[69] Rec. Docs. 12-1 at pp. 8-15; 13 at pp. 7-13. The parties do not address the second element as to whether RaceTrac either created or had actual or constructive notice of the condition which allegedly caused the damage, prior to the occurrence. Presumably, this is because it is undisputed that Defendants placed "wet floor" signs as to the condition of the floor, pending repair of a leaking cooler. Although neither party directly briefs the second element, Plaintiff conflates facts pertaining to, and which would implicate, the second element of notice with the first and third elements in arguing that disputed facts remain at issue. Rec. Doc. 13 at pp. 6-13.

an unreasonably dangerous condition and whether RaceTrac exercised reasonable care.[70]

### 1.    Whether the Wet Floor Presented an Unreasonable Risk of Harm

Defendants argue that Plaintiff did not encounter an unreasonably dangerous condition because clear video evidence and Plaintiff's testimony show that she observed and walked around a yellow "wet floor" sign a few feet from where she fell.[71] Defendants cite numerous cases granting summary judgment because of a plainly visible "wet floor" sign in the vicinity, especially when confirmed by video evidence.[72] Thus, Defendants assert that the wet floor did not create an unreasonable risk of harm, the risk was reasonably foreseeable, and RaceTrac exercised reasonable care.[73]

Plaintiff admits that jurisprudence supports Defendants' position.[74] However, she contends the facts of each case cited by Defendant are distinguishable from this case "based on the immediacy of the hazard involved."[75] Plaintiff contends that each decision includes "active involvement" by a defendant, such as "active mopping," in creating a temporary hazard or addressing a temporary hazard.[76] Plaintiff contends that here RaceTrac not only had actual knowledge of an "ongoing" leak, but created an additional hazard by keeping the cooler in service and leaving "the location" of the leak open for patrons to traverse.[77] Plaintiff argues that the continued foot traffic resulted in water from

---

[70] Rec. Doc. 12-1 at pp. 8-15.
[71] *Id.* at p. 8.
[72] *Id.* at pp. 8-10.
[73] *Id.* at p. 8 (citing *Perrin v. Ochsner Baptist Med. Ctr., LLC*, No. 2019-CA-0265 (La. App. 4 Cir. 8/7/19), 2019 WL 3719546, at *5).
[74] Rec. Doc. 13 at p. 5.
[75] *Id.* at pp. 5-6.
[76] *Id.* at pp. 6,10.
[77] *Id.* at p. 6.

the leak being tracked down a separate aisle where Plaintiff fell.[78] She contends that the location where she fell was not only removed from the visible hazard that she avoided, but also of a different type than the puddle of water marked by the "wet floor" sign.[79] Thus, Plaintiff argues genuine issues of material fact preclude summary judgment as to whether the condition was an "unreasonably dangerous condition."[80]

The first element under La. R.S. 9:2800.6 requires a plaintiff to establish a condition that presented an unreasonable risk of harm.[81] The mere fact that an accident occurred does not establish that a condition was unreasonably dangerous.[82] To determine whether a condition presents an unreasonable risk of harm, courts "must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others[.]"[83] In making this determination, Louisiana courts apply a risk-utility balancing test consisting of four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature."[84] Although the unreasonable risk of harm determination is "a matter wed to the facts," a court "may

---

[78] *Id.*

[79] *Id.* at p. 7.

[80] *Id.* at p. 10.

[81] La. R.S. 9:2800.6(B)(1).

[82] *Griffin v. Wal-Mart Louisiana, L.L.C.*, No. CIV.A. 14-110-JJB, 2015 WL 4162905, at *4 (M.D. La. July 9, 2015) (citing *Durmon v. Billings,* 873 So.2d 872, 876 (2nd Cir. 2004).

[83] *Latour v. Steamboats, LLC*, 2023-00027 (La. 10/20/23), 371 So. 3d 1026, 1035 (quoting *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La. 3/4/98), 708 So.2d 362, 365).

[84] *Latour*, 371 So. 3d at 1036 (citing *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So. 3d 467, 474).

determine by summary judgment that a defect is open and obvious and, therefore, does not present an unreasonable risk of harm."[85]

The Court considers each factor in turn.

### a.    Utility of the Complained-Of Condition

Here, it is undisputed that the complained-of-condition is the allegedly wet floor due to a leaking "grab & go" cooler. Defendants assert that, although this case turns primarily on the second factor, the other three factors also militate against finding an

---

[85] *See Temple v. Morgan*, 2015-1159, pp. 11–13 (La. App. 1 Cir. 6/3/16), 196 So. 3d 71, 77–79, *writ denied*, 2016-1255 (La. 10/28/16), 208 So. 3d 889; *see also Butler v. Int'l Paper Co.*, 636 F. App'x. 216, 221 (5th Cir. 2016), *as revised* (Jan. 15, 2016) ("[T]he Louisiana Supreme Court has instructed that one factor may often be determinative under the risk-utility balancing test."); *Rayburn v. Regions Fin. Corp.*, No. CV 22-484-JWD-RLB, 2025 WL 630654, at *8 (M.D. La. Feb. 26, 2025) ("Whether a condition is not an unreasonable risk of harm by virtue of being open and obvious is a proper question for summary judgment.").

In *Temple*, the Louisiana Court of Appeal for the First Circuit examined the appropriateness of summary judgment on the issue of "open and obvious," observing that the Louisiana Supreme Court "clarified the matter in a series of opinions, beginning with *Bufkin*, where the court reversed the district court and granted summary judgment in favor of the defendant. *Temple*, 196 So. 3d at 78 (citing *Bufkin v. Felipe's La., LLC*, 14-0288 (La. 10/15/14), 171 So.3d 851, 856); *see also Longino v. City of Oakdale*, 2021-296 (La. App. 3 Cir. 11/2/21), 332 So. 3d 753, 755-56 (stating the Louisiana Supreme Court clarified prior jurisprudence and clearly stated that summary judgment should not be precluded in cases where the plaintiff is unable to produce factual support for her claim that a complained-of-condition is unreasonably dangerous).

In *Bufkin*, the Louisiana Supreme Court elucidated that its opinion in *Broussard* "should not be construed as precluding summary judgment when no legal duty is owed because the condition encountered is obvious and apparent to all and not unreasonably dangerous." *Bufkin*, 171 So. 3d at 859, n. 3 (discussing *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13), 113 So. 3d 175).

In *Allen v. Lockwood*, the Louisiana Supreme Court further explained that its comments under "*Broussard* did not involve summary judgment practice nor did [its] discussion infer that issues of this nature must be determined by a trial. Any reading of *Broussard* interpreting it as a limit on summary judgment practice involving issues of unreasonable risk of harm is a misinterpretation of the *Broussard* case." 14-1724 (La. 2/13/15), 156 So. 3d 650, 652-53

Thus, "a court may determine by summary judgment that a defect is open and obvious and, therefore, does not present an unreasonable risk of harm." *Temple*, 196 So. 3d at 78. The Louisiana Supreme Court further clarified its statements in *Farrell v. Circle K Stores, Inc.*, stating that "whether a condition is open and obvious is embraced within the breach of duty element of the duty/risk analysis and is not a jurisprudential doctrine barring recovery, but only a factor of the risk/utility balancing test. Specifically, it falls within the second factor which considers the likelihood and magnitude of harm, and it is not a consideration for determining the legal question of the existence of a duty." 22-00849 (La. 3/17/23), 359 So. 3d 467, 478. If application of the risk/utility balancing results in a determination that the hazard is not an unreasonably dangerous condition, a defendant is not liable because there was no duty breached. *Id.* Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous; therefore, the defendant did not breach the duty owed. *Id.*

unreasonably dangerous condition.[86] Defendants contend the "grab & go" cooler at issue provided chilled food options for patrons, as well as profit to the store, which serves some utility and weighs in their favor.[87]

Plaintiff admits the "grab and go" cooler provided chilled food options for patrons of the store – the utility of which is to "keep perishable and consumable items fresh and convenient."[88] Although it points to the third factor, Plaintiff reasons here that the store had other sources of income, such as dry goods, beverages, and vehicle fuel, therefore turning off the leaking machine would play only a small role in store profit.[89] Plaintiff contends that RaceTrac's decision to leave the leaking cooler, with an ongoing leak in an aisle of the store, serves minimal utility to patrons when contaminated by water.[90]

Here, it is undisputed that the "grab & go" cooler and beverage aisle have utility because it allows (even if leaking) a patron to utilize convenient "grab & go" options while providing a profit to the RaceTrac. Moreover, the beverage aisle, to which there are undisputably three route options, has utility in allowing patrons to continue to traverse the beverage area which was still functional and part of providing profit to the store. Therefore, this factor weighs in favor of Defendants.

### b.    Likelihood and Magnitude of Harm

"The likelihood of the harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably

---

[86] Rec. Doc. 14 at p. 5. Defendants did not cite the specific risk-utility analysis in their original memorandum because numerous courts have found, as a matter of law, that an open and obvious condition cannot be unreasonably dangerous. *Id.* at p. 3. However, Defendants analyzed the factors in their Reply. *Id.*
[87] *Id.*
[88] Rec. Doc. 13 at p. 8.
[89] *Id.*
[90] *Id.*

dangerous."[91] In evaluating this factor, "relevant considerations include the size, context, and location of the condition, as well as the accident history."[92] Additionally, the Louisiana Supreme Court recently clarified that the notion of "open and obvious risks" is included in this part of the risk-utility balancing test.[93] That is, "[t]he more obvious the risk, the less likely it is to cause injury because it will be avoided."[94]

Defendants essentially argue that they warned of the condition alleged to have caused Plaintiff's fall with three warning signs, as shown by video evidence; thus, making the condition "open and obvious."[95] Defendants note that the large number of cases granting summary judgment in wet floor cases, when appropriate signage is used, demonstrates that there is minimal risk that a reasonably cautious person would slip on a wet floor just a few feet from a warning sign.[96] Defendants maintain it was unreasonable for Plaintiff to assume, after walking past three "wet floor" signs, the third of which had an "open and obvious" pool of water underneath, that the sign pertained only to the visible pooling of water she immediately observed under it and not in the general vicinity.[97] Given the facts, Defendants state that the risk of encountering wetness a few feet away would be obvious to a prudent person acting with due care, even without more visible pooling there.[98] Defendants further note that Plaintiff cites no supporting authority as to their

---

[91] *Farrell*, 359 So. 3d at 474.
[92] *Latour*, 371 So. 3d at 1036.
[93] *Farrell*, 359 So. 3d at 478.
[94] *Id*. at 474. The *Farrell* court also clarified that "it is inaccurate to profess that a defendant generally does not have a duty to protect against an open an obvious condition." *Id*. at 478. Therefore, the fact that a condition was open and obvious does not operate as a bar to recovery.
[95] Rec. Doc. 14 at pp. 3-4.
[96] *Id*. at p. 4.
[97] *Id*.
[98] *Id*. at p. 5.

contention that an unobstructed "wet floor" sign a few feet from an alleged wet spot is insufficient to reasonably warn the Plaintiff.[99]

Plaintiff argues the hazard was not "open and obvious."[100] While it is undisputed there were three routes to the beverage center, Plaintiff argues that, even though the area of the leak could have been blocked off to prevent tracking of water into the beverage center, Wilson's testimony established that it was the most direct route.[101] Plaintiff points to Wilson's testimony that store management chose to keep this direct route open.[102] Wilson testified the "leak had been occurring for a period of weeks.[103] Plaintiff contends this was long enough for the store to attempt other methods to keep the cooler in use.[104] Plaintiff notes Wilson testified that the "regular process" to deal with the ongoing leak was "[t]o just clean it up as the water comes out. Sometimes we would put, like little towels down behind the machine to try to stop it. But it would just leak through and leave a big old mess. So we just pick up the towels, and just mop as often as possible."[105] Plaintiff argues that because RaceTrac permitted the ongoing leak to remain present in a highly traversed area, the likelihood and magnitude of the harm is "undeniable."[106]

Plaintiff admits it is undisputed that she passed two "wet floor" signs where she testified there was no visible water hazard, then encountered a third "wet floor" sign where there was an "open and obvious" pool of water.[107] Plaintiff testified the water "underneath"

---

[99] *Id.*
[100] Rec. Doc. 13 at pp. 8-9.
[101] *Id.* at p. 9 (citing Rec. Doc. 12-5 at p. 29).
[102] *Id.*
[103] *Id.* (citing Rec. Doc. 12-5 at p. 29).
[104] *Id.*
[105] *Id.* (citing Rec. Doc. 12-5 at pp. 29-30).
[106] *Id.*
[107] *Id.*

the third sign was the size of a "small plate."[108] Plaintiff argues she then turned and walked down the beverage aisle and slipped on what the jury can conclude "is water tracked from the 'open and obvious' hazard," created by RaceTrac's refusal to shut down the leaking cooler.[109] Thus, Plaintiff posits that a genuine issue of material fact remains "relative to its 'open and obvious' nature."[110]

Plaintiff relies on *Morales v. McPherson Co.*,[111] wherein the United States District Court for the Eastern District of Louisiana denied summary judgment after performing risk/utility analysis.[112] There, the plaintiff was a store employee who slipped while attempting to clean an oil spill.[113] Plaintiff here argues that, just like the "actively spreading" oil in *Morales*, Defendants here allowed an "ongoing" leak to continue spreading.[114] Plaintiff seeks to apply the *Morales* case to the risk/utility analysis to present a genuine issue of fact that RaceTrac permitted the ongoing leak to remain in a highly traversed are; thus, was it not "open and obvious."[115]

Plaintiff however conflates assertions of facts pertaining to the element of unreasonable risk of harm with those pertaining to the second element of notice under La. R.S. 9:2800.6.[116] *Morales* however does not analyze the facts under the elements of La. R.S. 9:2800.6, although it does apply a risk/utility analysis. Additionally, unlike the oil in *Morales* that was "not meant to be there" and "lacked social utility,"[117] there is social

---

[108] *Id.*
[109] *Id.* at p. 10.
[110] *Id.*
[111] 22-3376 (E.D. La. May 8, 2023), 2023 WL 3303451.
[112] Rec. Doc. 13 at pp. 7-9.
[113] *Id.*
[114] *Id.* at p. 8 (citing *Morales*, 2023 WL 3303451, at *7).
[115] *Id.* at pp. 8-9.
[116] *Id.* at pp. 7-10.
[117] *Morales*, 2023 WL 3303451, at *3.

utility in keeping the functional but leaking cooler in operation, while awaiting repair of the leak, for patrons' use and the RaceTrac's profit, which Plaintiff here admits.[118]

Compounding on her conflation of the second element of notice with the first element, Plaintiff contends RaceTrac's actual knowledge of an "ongoing" leak "created an additional hazard" in keeping the cooler in service and leaving the location open to patrons.[119] However, as noted herein, facts as they pertain to the second element were not disputed or briefed before the Court. Additionally, the existence of the leaking cooler in not disputed and while Plaintiff contends the evidence reflects an "ongoing" nature of the leak, Wilson's testimony establishes the store repaired the cooler when the leaks occurred, and implemented store policy of mopping and placing wet-floor warning signs, which Plaintiff also does not dispute.

The Court finds that the second factor under the risk/utility analysis of the first element under La. R.S. 9:2800.6(B) is dispositive here. "Courts have refused to hold merchants liable for slip and fall incidents in which a patron testifies to seeing a wet floor or noticing a merchant's warning signs before proceeding to walk in a slippery area."[120] If a risk of harm is obvious, universally known, and easily avoidable, it is not unreasonable,

---

[118] Rec. Doc. 13 at p. 8.

[119] *Id*. at p. 6.

[120] *Domingue v. TA Operating, LLC*, No. CV 21-606-SDD-RLB, 2023 WL 174967, at *7 (M.D. La. Jan. 12, 2023) (citing *Lee v. Ryan's Family Steak Houses, Inc.*, 2006-1400 (La. App. 1 Cir. 5/4/07), 960 So.2d 1042 (holding factfinder's conclusions as to liability in slip and fall case were manifestly erroneous, as patron testified that she noticed the floor was slippery and wet and walked within a foot or two of a three-foot-tall warning cone placed on the wet floor by merchant.); *Rowell v. Hollywood Casino Shreveport*, 43,306 (La. App. 2 Cir. 9/24/08), 996 So.2d 476, 479 ("Most significantly, while [the plaintiff] may take issue with the exact location of the wet floor cone, she admits observing the wet floor warning upon entering the women's restroom.")

and the defendant has no duty to warn or protect against it.[121] Thus, "an open and obvious condition cannot be unreasonably dangerous as a matter of law."[122]

Moreover, "the Louisiana Supreme Court has relied upon [a] plaintiff's testimony or photographs of [a] scene to establish that a condition is "open and obvious" in several different cases."[123] In *Butler v. Int'l Paper Co.*, the Fifth Circuit, observed that the Louisiana Supreme Court "recently clarified that the application of the risk-utility balancing test is not necessary at the summary judgment stage[,]" where the condition is "open and obvious" to anyone who may encounter it.[124] "[Louisiana] jurisprudence has held that where caution signs are set up within a clear line of sight of visitors, there is no genuine issue of material fact that a wet floor does not create an unreasonable risk of harm."[125] "[T]here is no requirement, jurisprudential or otherwise, that a merchant must cardon off

---

[121] *Id.* (citing *Buchanan v. Wal-Mart Stores, Inc.*, 834 F. App'x. 58 (5th Cir. 2020) (citing *Smith v. Winn Dixie Montgomery, LLC*, CIV.A. 13-194-SDD, 2014 WL 2740405, at *3 (M.D. La. June 17, 2014)); *see also Durman v. Billings*, 38,514 (La. App. 2 Cir. 3/12/04), 873 So.2d 872; *Hayes v. Entergy Corp.*, 37,190 (La. App. 2 Cir. 6/25/03), 850 So.2d 916.

[122] *Moore v. Fam. Dollar Stores, Inc.*, No. 1:21-CV-03764, 2023 WL 3662706, at *3 (W.D. La. Apr. 17, 2023) (citing *Massery v. Rouse's Enter., L.L.C.*, 16-0121, p. 6 (La. App. 4 Cir. 6/29/16), 196 So. 3d 757, 762 ("[I]t is well settled that a condition which is open and obvious is not unreasonably dangerous, and a merchant has no duty to protect against it.")).

[123] *Butler*, 636 F. App'x at 221(citing *Allen,* 156 So.3d at 653; *Bufkin,* 171 So.3d at 856; *Dauzat v. Curnest Guillot Logging Inc.,* 2008-0528, p. 6 (La. 12/2/08), 995 So.2d 1184, 1187).

[124] *Butler*, 636 F. App'x at 219 (citing *Allen*, 156 So. 3d at 653). "Indeed, the Louisiana Supreme Court has concluded in several cases that the balancing "revolve[d] around the second factor, namely, the substantial likelihood and magnitude of harm from the [defect], with consideration to whether the [defect] was apparent or obvious." *Id.* at 221 (citing *Dauzat, 995 So.2d at 1187; Bufkin,* 171 So.3d at 856–59) (resting decision to grant summary judgment on second factor); *Pryor v. Iberia Par. Sch. Bd.,* 10-1683, p. 6 (La. 3/15/11), 60 So.3d 594, 598 (per curiam) (same)); *see also Thibodeaux v. Home Depot USA, Inc.*, 816 F. App'x 988, 990 (5th Cir. 2020).

[125] *Perrin*, 364 So. 3d at 15 (citing *Schroeder v. Hanover Ins., Co.*, 2018-0294, p. 7 (La. App. 3 Cir. 9/19/18), 255 So.3d 1123, 1127 (citing *Melancon*, 59 So.3d at 516); *Schroeder v. Walgreens Family of Cos.*, 2014-0322, p. 6 (La. App. 4 Cir. 9/24/14), 150 So.3d 926, 929, *rev'd on other grounds*, 2014-2238 (La. 1/23/15), 159 So.3d 449 ("when proper signage is used to warn patrons of the floor's condition, a wet floor does not create an unreasonable risk of harm") (citing *Rowell*, 996 So.2d at 479); *see also Migliore v. Ambassador P'ship., LLC*, 22-599 (La. App. 5 Cir. 12/1/23), 376 So.3d 1178, 1182 (citing cases).

an area of the floor after mopping it."[126] Plaintiff offers no other caselaw to support her assertions.

Here, the undisputed material facts indicate that the condition of the wet floor would have been obvious to a reasonable person traversing the area.[127] The undisputed record evidence shows that RaceTrac warned Plaintiff of the condition of the floor from the moment she walked in the door.  As clearly depicted from images of video surveillance,[128] Plaintiff admittedly encountered three "wet floor" signs, with the last one being in her path at the end of the chip display in her path to the beverage center, unobscured and in the path of anyone approaching the drink machine from that side of the chip display, with a mop and bucket a few feet behind and to the left of it.[129] It is undisputed that Plaintiff paused to look at the sign, saw accumulated water under it, and knew the sign was a warning about wet floors.[130] The irrefutable images show the sign was in her path, seconds prior to her falling and within feet of the fall.[131] Although she points to Wilson's testimony that the leak had been ongoing "for a couple of weeks. Maybe a month or so[,]"[132] Plaintiff does not dispute that the store followed its procedure by mopping the

---

[126] *Migliore*, 376 So.3d at 1182.
[127] *See Bufkin*, 171 So.3d at 855 (observing that "a pedestrian has a duty to see that which should be seen and is bound to observe [her] course to see if [her] pathway is clear").
[128] When considering claims arising under the Merchant Liability Act on a motion for summary judgment, "[t]he Fifth Circuit has indicated that courts should give greater weight . . . to facts evidenced from video recordings taken at the scene." *See Smith v. Circle K Stores, Inc.*, 2021 WL 4853846, at *5 (W.D. La. Oct. 18, 2021) (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).
[129] Rec. Docs. 12-2; 13-1; 13-2.
[130] *Id.*
[131] Rec. Doc. 12-4 at pp. 105-111.
[132] Rec. Doc. 13-2 at p. 2. Wilson testified that the leak was a slow drip that "would go into that pathway of where the chips and the fountain area is." Rec. Doc. 12-5 at pp. 23-24.  Wilson testified that that customers would still bypass the sign. *Id.* at p. 24.  Wilson testified it was an "active leak," and that the store would clean the area and put down wet floor signs while awaiting repairs.  *Id.* at pp. 25-27.  Wilson testified that multiple repair tickets had been put in for the leaking equipment, which leaked often, maybe over ten times. *Id.* at pp. 27-28.  Wilson further testified that when they came in to repair the cooler, it would not continue to leak immediately, but would slowly start back leaking a "real, real slow leak." *Id.* at p. 46. Wilson also

area and placing the "wet floor" signs where the leak was, while the leaking refrigerator was awaiting repairs.[133]

Thus, the Court finds that the undisputed evidence shows no genuine issue of material fact as to whether the condition was open and obvious and that the risk of harm was reasonably foreseeable.[134] Because the risk of harm was open and obvious, RaceTrac had no duty to protect against it.[135] Thus, Plaintiff's failure to establish the first element under La. R.S. 2800.6(B)(1) is fatal to this cause of action.[136]

In finding the condition did not present an unreasonable risk of harm to Plaintiff, the remainder of the risk/utility analysis bears little weight. Nevertheless, the Court considers the parties' assertions.

### c.    Cost of Preventing the Harm

Defendants argue this factor weighs against finding an unreasonable risk of harm because, as Plaintiff admits, her preferred remedy of taking the cooler out of service or blocking customers from the area would "[c]learly" impose "some cost."[137] Defendants state that Racetrac was already committed to incurring the cost to fix the problem as it is undisputed that it had requested service for the machine by the time Plaintiff fell.[138]

---

testified that Plaintiff came into the store on a regular basis to get ice from the beverage center in the back right of the store, wherein the leak had been reoccurring in the most direct path to the area for weeks preceding the accident. *Id.* at pp. 28-29. He also testified it was common for people to walk through the area and would track additional liquid into the area in front of the beverage center. *Id.* at pp. 35-36. Wilson could not think of another incident of a patron actually falling, but he stated customers have slipped and caught themselves. *Id.* at p. 41. Wilson also admitted he was fired from RaceTrac for putting hours in that he was not working. *Id.* at p. 53.

[133] Rec. Docs. 12-2 at ¶¶10-11; 13-1 at ¶¶10-11.

[134] "Rather than looking to whether the Plaintiff had actual knowledge of the condition, 'the open-and-obvious inquiry is objective, looking to whether the condition is obvious to all who may encounter it.'" *Thibodeaux*, 816 F. App'x. at 990 (citing *Broussard*, 113 So. 3d at 184).

[135] *See Buchanan*, 834 F. App'x. at 58 (citing *Smith*, 2014 WL 2740405, at *3); *see also Massery*, 196 So. 3d at 762; *Broussard*, 113 So. 3d at 188.

[136] *See White*, 699 So. 2d at 1086; *see also Bertaut*, 209 So. 3d at 356; *Migliore*, 376 So. 3d at 1183.

[137] Rec. Doc. 14 at p. 6.

[138] *Id.* (citing Rec. Doc. 12-6 at ¶¶4-6 and p. 2).

Plaintiff concedes there is some cost to turning off the leaking cooler, acknowledging RaceTrac would not make sales from the "grab & go" cooler if it was taken out of service.[139] Plaintiff suggests RaceTrac could have kept the cooler running and leaking, while blocking off the ability of customers to traverse and track water from the area, or it could have fixed or replaced the faulty unit.[140] Plaintiff argues the cost of these actions to prevent harm are relatively low compared to the risk of serious injury.[141]

However, as stated herein, Plaintiff shows no supporting authority that a merchant must remove a leaking unit, or cardon off an area, to prevent an unreasonable risk of harm under the statute. Thus, this factor does not weigh in favor of Plaintiff.

### d.    Nature of Plaintiff's Activities

Defendant argues that the fourth factor "weighs heavily against finding an unreasonably dangerous condition because there is no particular social utility in Plaintiff's going to get a cup for her 'coffee ice.'"[142] Defendants state that Plaintiff's unreasonable assumption that the area by the drink machines was dry merely because the pooled water and sign she saw was a few feet away increased her danger.[143]

Plaintiff asserts she was a regular store customer, which is the purpose of the store.[144] She argues it should not be dangerous by nature to enter a merchant's facility as a customer.[145] Plaintiff contends the sole reason it was dangerous by nature was RaceTrac's ongoing tort of keeping an actively leaking piece of machinery in service.[146]

---

[139] Rec. Doc. 13 at p. 10.
[140] *Id.*
[141] *Id.*
[142] Rec. Doc. 14 at p. 6.
[143] *Id.*
[144] Rec. Doc. 13 at p. 10.
[145] *Id.*
[146] *Id.*

"The last factor of the risk-utility analysis requires consideration of the nature of [the plaintiff's] activities in terms of social utility or whether the activities were dangerous by nature."[147] Here, the nature of Plaintiff's activity was not dangerous by nature and bears social utility as a patron. However, although the utility of Plaintiff's activity "may be important and it is not dangerous in nature, it does not weigh heavily as a consideration in determining an unreasonably dangerous condition."[148]

Based on the undisputed material facts, including images of video surveillance to which the Court gives greater weight,[149] the Court finds there are no genuine issues of material fact that the wet floor, marked by caution signs, was open and obvious, and thus did not create an unreasonable risk of harm.

### 2.    Failure to Exercise Reasonable Care

The undisputed material facts relevant to the third element under La. R.S. 2800.6(B)(1) is equally fatal to Plaintiff's cause of action.[150] Defendants contend Plaintiff cannot prove RaceTrac failed to exercise reasonable care because there is unrebutted evidence that RaceTrac deployed unobstructed yellow "wet floor" signage just a few feet from where Plaintiff fell.[151] Defendants assert elements one and three factually overlap because the reason the alleged wet floors did not pose an "unreasonable risk of harm" is that RaceTrac used "reasonable care" by placing warning signage in the area.[152]

Defendants argue that RaceTrac had a policy of calling a repairman when the leaking cooler was reported, and in the meantime, mopping the floor and placing yellow

---

[147] *Latour*, 371 So. 3d at 1038.
[148] *Farrell*, 359 So.3d at 479.
[149] *See Carnaby*, 636 F.3d at 187.
[150] *See White*, 699 So. 2d at 1086; *see also Bertaut*, 209 So. 3d at 356; *Migliore*, 376 So. 3d at 1183.
[151] Rec. Doc. 12-1 at p. 10.
[152] *Id.* at p. 11.

caution signage at the site of the problem.[153] Plaintiff's friend and former shift manager Wilson admits that was done here.[154] Thus, Defendants contend RaceTrac exercised reasonable care.[155] Further, Defendants argue the unrebutted evidence shows RaceTrac exercised reasonable care by placing yellow "wet floor" signage a few feet from where Plaintiff fell.[156] Plaintiff admits that before she fell, she recognized the sign as a "wet floor" sign that cautioned her to be careful.[157]

Defendants point to numerous Louisiana federal and state court decisions holding that a merchant exercises reasonable care by placing an unobstructed caution sign in the vicinity of a wet floor, and they argue nothing distinguishes the instant case.[158] Defendant contends that even where a plaintiff fails to see the "wet floor" sign, summary judgment is appropriate.[159] Plaintiff admits she saw the sign, as well as puddled water under the sign, and she paused to observe the sign before proceeding around it.[160] Defendants state that Plaintiff's testimony that there should have been a "wet floor" sign immediately on top of or next to the spot where she slipped is a notion rejected by the courts.[161] "[C]ourts require only that visible warning signage be placed in the reasonable vicinity of the wet area."[162]

Plaintiff states her arguments as to the first element apply to whether RaceTrac failed to exercise reasonable care.[163] Plaintiff asserts Defendants acknowledged that the

---

[153] *Id.*
[154] *Id.*
[155] *Id.*
[156] *Id.* (citing Rec. Doc. 12-4 at pp. 82, 106).
[157] *Id.* (citing Rec. Doc. 12-4 at p. 54).
[158] *Id.* at pp. 12-13.
[159] *Id.* at p. 13.
[160] *Id.* (citing Rec. Doc. 12-4 at pp. 61, 74).
[161] *Id.* at p. 14.
[162] *Id.* at p. 15 (citing *Cruz v. W.H. Braum, Inc.*, No. 21-40477 (5th Cir. Feb. 3, 2022), 2022 WL 325469, at *3).
[163] Rec. Doc. 13 at p. 11.

"home office" had knowledge of a leak from the leaking cooler from at least July 19, 2023 and that it was again reported on August 14, 2023.[164] Plaintiff further argues the record evidence shows personnel in the store had knowledge that the unit was actively leaking in the weeks leading up to the fall and failed to address to source of the leak.[165]

Plaintiff again asserts the facts of this case are distinguishable from those cited by Defendants wherein courts found that the placing of a "wet floor" sign for a leak constitutes reasonable care.[166] She claims this case involves an "ongoing" leak distinguishable as an "ongoing hazard" versus a temporary hazard such as "active mopping" or a spilled soda.[167] Plaintiff posits that taking the cooler out of service or blocking the aisle would be more reasonable.[168] Plaintiff contends that RaceTrac had ongoing knowledge that mopping the accumulated water and putting out "wet floor" signs was insufficient, pointing to Wilson's testimony that she saw "near-miss" slip incidents despite the use of signage

---

[164] *Id.* (citing Rec. Doc. 12-6). Plaintiff questions the accuracy of Romeo's attestation that "Plaintiff fell on August 15, 2023, before the repairman arrived." Rec. Doc. 13 at p. 11 (citing Rec. Doc. 12-6 at ¶6). Plaintiff questions whether repair was made the same day after Plaintiff fell and questions the efficacy of the repairs to the cooler. *Id.* at p. 11, n. 35. Plaintiff bases her assertion on Exhibit 16 of her deposition which she contends is an image of "a large active leak under a wet floor sign taken the day following the August 15, 2023 fall." *Id.* Plaintiff does not point to any other record evidence supporting this assertion. A review of Plaintiff's testimony establishes that "the puddle on Exhibit 16" "was taken after the accident," "on either the day after the accident or some other day[.]" Rec. Doc. 12-4 at pp. 53-54, 68. Exhibit 16 was discussed in terms of discussing a comparison of the representative size of the puddle and a discussion of the quality, color, style, and wording of the type of sign she saw. *Id.* Additionally, in support of Romeo's attestation, a service invoice shows a repair order created August 14, 2023 at 6:37 CST with a repair scheduled for August 15, 2023 at 18:30 CST. Rec. Doc. 12-6 at pp. 1-4. It also shows repair work completed on August 15, 2023 at 12:40 CST consisting of "clean coils and clean out drain[.]" *Id.* at p. 3. Wilson testified that the "ongoing leak that was occurring" was due to condensation, that the store would put in repair tickets, and that maintenance people would come fix it and it would start back leaking again. Rec. Doc. 12-5 at pp. 20-21, 46-47. Plaintiff does not point to record evidence refuting Romeo's attestation and repair order. Regardless, Plaintiff does not dispute that during the time leading up to her fall, the store followed its procedure by mopping the area and placing a yellow "wet-floor" sign where the leak was, which was because of a leaking refrigerator that was awaiting repairs. Rec. Docs. 12-2 at ¶¶10-11; 13-1 at ¶¶10-11.
[165] Rec. Doc. 13 at p. 11.
[166] *Id.*
[167] *Id.*
[168] *Id.* at pp. 11-12.

and mopping.[169] Plaintiff disputes that Defendants are relieved of liability simply because Plaintiff admittedly saw the sign and the puddle under the sign.[170] Rather, Plaintiff claims it was only after she entered a "different aisle" that she encountered tracked water and fell.[171] She asserts that the facts establish that she fell at least five feet up to eight or nine feet from the warning sign.[172] She questions the "protective radius" of a "wet floor" sign.[173] Thus, Plaintiff argues RaceTrac's actions lacked reasonable care by "keeping the malfunctioning cooler operational, the aisles open and the hazardous condition continuing to spread."[174]

Defendants respond that Plaintiff provides no authority for the "invented proposition that warning signage is adequate for 'temporary' problems but not for 'ongoing' problems."[175] Defendants argue that Plaintiff cannot survive summary judgment by arguing that her preferred approach to the leak is "more reasonable" than the jurisprudentially approved method of mopping and placing signage.[176]

Under La. R.S. 9:2800.6, "a merchant such as [RaceTrac] owes a duty to persons who use its premises to exercise reasonable care to keep its aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to

---

[169] *Id.* (citing Rec. Doc. 12-5 at pp. 51-52).
[170] *Id.* at p. 12.
[171] *Id.*
[172] *Id.* at pp. 3, 13. Plaintiff initially argues she fell approximately five to eight feet from the visible puddle and "wet floor" sign. *Id.* at p. 3, n. 21. Plaintiff later contends she was at least five and up to nine feet from the warning sign. *Id.* at p. 13.
[173] *Id.* at p. 13.
[174] *Id.*
[175] Rec. Doc. 14 at p. 6.
[176] *Id.* (citing *Simmons v. Berglin*, 401 F. App'x. 903, 908-09 (5th Cir. 2010)).

damage."[177] "However, merchants are not insurers of their patrons' safety, and a customer is under a duty to use ordinary care to avoid injury."[178] Plaintiff must establish that RaceTrac failed to exercise reasonable care.[179] The absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.[180]

*Melancon v. Popeye's Famous Fried Chicken*[181] is more typical of many Louisiana slip and fall cases. In *Melancon*, summary judgment was found to be proper where two "wet floor" signs were present in the area where an employee was mopping during business hours and the patron walked directly past the signs and the employee.[182] This was held to be sufficient notice that a wet floor condition existed throughout a fast-food restaurant.[183] "Jurisprudence has specifically found that mopped floors do not create an unreasonable risk of harm when the appropriate signage is used to warn patrons of the condition of the floor."[184]

Under similar facts, the Fifth Circuit affirmed summary judgment, finding the defendant did not create an unreasonable risk of harm and exercised reasonable care by placing three warning signs throughout the store, which plaintiff passed, along with an employee actively mopping, before her fall.[185] There, the court stated that whether or not

---

[177] *Mincey v. Rouse's Eng'g, LLC*, 23-0251, p. 4 (La. App. 1 Cir. 11/3/23), 378 So. 3d 126, 129 (citing La. R.S. 9:2800.6(A), *and Lewis v. Jazz Casino Co., LLC.*, 17-0935, p. 7 (La. App. 4 Cir. 4/26/18); 245 So.3d 68, 73).

[178] *Short v. RaceTrac Petroleum, Inc.*, 22-0859, p. 11 (La. App. 1 Cir. 2/24/23), 361 So. 3d 1051, 1060.

[179] La. R.S. 9:2800.6(B)(3).

[180] *Id.*

[181] 10-1109 (La. App. 3 Cir. 2011); 59 So. 3d 513.

[182] *Melancon*, 59 So. 3d at 515-16.

[183] *Id.* at 516.

[184] *Id.* (citing *Rowell,* 996 So.2d at 476; *Lee,* 960 So.2d 1042; *see also McDonald v. PNK (Bossier City), LLC,* 304 So. 3d 143 (La. Ct. App. 2 Cir. 2020).

[185] *Foreman v. Circle K Stores, Inc.*, 766 F. App'x. 165, 168 (5th Cir. 2019) (stating that Louisiana jurisprudence "has specifically found that mopped floors do not create an unreasonable risk of harm when

plaintiff actually saw the "wet floor" sign, the defendant did not act negligently, as there were multiple opportunities to observe the warning signs before her fall.[186]

Plaintiff establishes that it is undisputed that the "grab & go" refrigeration unit was actively leaking at the time of the accident, caused by condensation according to former RaceTrac shift manager Wilson's testimony. It is undisputed that Wilson testified that RaceTrac "had constant problems with this machine leaking," and that the leak had been ongoing for "a couple of weeks" to "maybe like a month or so."  Plaintiff further shows that Wilson testified that patrons would "walk directly through" the water and "track that whole section where the beverages, in front of the chips, even by the section where the drinks are in the refrigerated area."[187]

Plaintiff references RaceTrac's actual knowledge of the leak, arguing that it "created an additional hazard" by keeping the cooler in service and the aisle open to patrons to track water.[188] However, Plaintiff's arguments regarding the "ongoing" nature of the leak go to the second element of notice under La. R.S. 9:2800.6(B)(2) as to whether the potentially negligent maintenance or keeping the cooler in service "created" the "condition which caused the damage, prior to the occurrence."[189] As noted herein, neither

---

the appropriate signage is used to warn patrons of the conditions of the floor" and that "[d]espite the fact that [the plaintiff] denied seeing any warning signs or cones, she had multiple opportunities to observe the warning sign or cone upon entering and exiting through the corridor"); *see Douglas v. PNK (Lake Charles) LLC*, 2019 WL 1368532, at *4 (quoting *Melancon*, 59 So. 3d at 516).

[186] *Foreman*, 766 F. App'x. at 168 (citing *Turner v. Brookshire Groc. Co.*, 34,562, p. 5 (La. App. 2 Cir. 4/4/01), 785 So. 2d 161, 165); *Melancon*, 59 So. 3d at 516).

[187] Rec. Doc. 12-5 at p. 36.

[188] Rec. Doc. 13 at p. 6.

[189] *See Deshotel v. Wal-Mart La., LLC.*, 850 F.3d 742, 747-48 (5th Cir. 2017) (synthesizing Fifth Circuit and Louisiana state court cases finding that it must be evident that a defendant "created" the hazardous condition, explaining that "[t]he ordinary meaning of 'creation' admits of creation both through direct action – pounding holes into the roof with hammers –and failure to act –e.g., a failure to fix a known leaky roof, leading to the creation of hazardous puddles on the floor."); *see also Kennedy v. Wal-Mart Stores, Inc.*, 98-1939 (La. 4/13/99), 733 So. 2d 1188, 1191 (Though the time period need not be specific in minutes or hours, constructive notice requires the claimant prove the condition existed for some time prior to the fall.").

party briefed the second element as it was undisputed that Defendants had knowledge of the leaking cooler, which was awaiting repairs, and that the area had been recently mopped, with three yellow "wet floor" signs and a mop bucket out in the interim.[190] Plaintiff raises this assertion regarding the alleged "ongoing" nature of the leak to establish Defendant failed to exercise reasonable care in not taking the cooler out of service, failing to address the source of the leak, or blocking access to the area of the leak.[191] Plaintiff does not provide any caselaw supporting this assertion as it relates to the third element.

Along those same lines, in asserting RaceTrac "created" an additional hazard, Plaintiff tries to distinguish the "immediacy of the hazard" in this case from the facts in the cases cited by Defendant.[192] Plaintiff summarizes that each case included "active involvement," such as "actively mopping" or "recently mopped," in "creating a temporary hazard or addressing a temporary hazard."[193]

However, Plaintiff oversimplifies her characterizations of those hazards as "active" while failing to account for the material facts as to the exercise of reasonable care by a merchant in warning of such hazards by its cleanup and signage. Plaintiff's argument "blurs the lines of the elements of proof required by La. R.S. 9:2800.6" by asserting that RaceTrac failed to exercise reasonable care by creation of the hazard or failure to remedy or maintain the cooler creating the hazard.[194] Assertions as to Defendants' alleged failure to remedy an "ongoing" nature of a condition or hazard would be germane to determine

---

[190] Rec. Docs. 12-2 at ¶¶10-11; 13-1 at ¶¶10-11.
[191] Rec. Doc. 13 at p. 12.
[192] *Id.* at pp. 5-6.
[193] *Id.*
[194] *See Matlock v. Brookshire Grocery Co.*, 53,069 (La. App. 2 Cir. 11/20/19), 285 So. 3d 76, 82 (finding that such arguments would nullify an element of La. R.S. 9:2800.6).

whether Defendants "created the condition" and thus had constructive or actual notice of the condition under the second element.[195] Notice is not at issue here.

Although Defendants admit Wilson testified that the leak was ongoing, RaceTrac disputes that characterization with the affidavit of RaceTrac General Liability Specialist Romeo.[196] Romeo attests that a leak in the cooler was reported on July 19, 2023, and fixed the next day, and another issue was reported on August 14, 2023, with a similar condensation issue and fixed on August 15, 2023 – the day of Plaintiff's accident.[197] In the interim between the report and the repairman arriving and fixing the problem, the store's policy was to mop the area of the spill and place "wet floor" signage near the store entrance and in the immediate vicinity of the spill.[198]

Plaintiff also does not provide support for the assertion that RaceTrac had to place a sign directly over the spot where she fell or block off the aisle. This Court has previously rejected a similar argument, observing that "[p]laintiff does not cite, nor is the Court aware of any case that holds signage is unreasonable if water is slightly outside of a wet floor sign."[199]

It is undisputed that the three yellow "wet floor" signs and mop bucket were out because of a leaking refrigerator near the pizza display that was awaiting repairs. Video surveillance indicates the three signs, a mop bucket by the third sign, Plaintiff walking by the first two, then observing the unobscured third sign in the path of anyone approaching

---

[195] *See* La. R.S. 9:2800.6(B)(2).
[196] Rec. Doc. 15 at ¶10 (citing Rec. Doc. 12-6 at ¶¶3-4).
[197] Rec. Doc. 12-6 at ¶¶3-5.
[198] *Id.*
[199] *Ward v. American Multi-Cinema, Inc.*, 2018 WL 3552335, at *2 (M.D. La. Jul. 24, 2018) (granting summary judgment where plaintiff admittedly fell within a foot or two of a "wet floor" sign); *Jones v. Circle K Stores, Inc.* No. 16-cv-00691 -BAJ-EWD, 2018 WL 910163, at *2 (M.D. La. Feb. 15, 2018) (citing *Melancon*, 59 So. 2d at 516) (finding the merchant exercised reasonable care by placing two "wet floor" within a few feet of an employee mopping, one of which was "near" where plaintiff fell).

the drink machine from that side of the chips display, walking past it, and falling within feet of the third sign and mop bucket.[200] Plaintiff admits she paused to look at the sign because she could see accumulated water under it and knew the sign was a warning about wet floors.[201] It is also undisputed that during the time leading up to Plaintiff's fall, the store followed its procedure by mopping the area and placing a yellow "wet floor" caution sign where the leak was.

Moreover, the still images of the video surveillance with time-stamps clearly depict the three "wet floor" signs, located from Plaintiff's entry into the RaceTrac throughout her path and up to the beverage center the third of which she paused to observe, walked around it and obtained a cup, turned around again facing the same sign, and falling within seconds at the beverage center. The Court "need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'"[202] The images establish that the RaceTrac used the appropriate signage to warn patrons such as Plaintiff of the wet condition of the floor.[203] They further discredits Plaintiff's argument that she "fell on a different aisle" than the third "wet floor" sign as the video surveillance from multiple angles shows that, in the path she traversed (one of three access points to beverage center), the sign was directly in front of her within a few feet to the beverage center.[204] The images depict Plaintiff successfully grabbed a cup from the beverage center, turned around facing the same sign

[200] Rec. Docs. 12-2 at ¶¶3-7, 10, 11; 13-1 at ¶¶3-7, 10, 11; 12-4 at pp. 102-115.
[201] Rec. Docs. 12-2 at ¶7; 13-1 at ¶7.
[202] *Carnaby*, 636 F.3d at 187 (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).
[203] Rec. Doc. 12-4 at pp. 102-116.
[204] *Id.*

again from the other direction, and within three seconds fell after turning back again to the beverage center.[205]

Thus, the undisputed facts establish that RaceTrac followed its safety procedure and exercised reasonable care by placing three "wet floor" signs to warn Plaintiff of the wet floor, which Plaintiff saw unobscured in her direct path and recognized as a warning about wet floors. On the record before the court, even assuming the hazardous condition (ongoing leaking cooler) existed and RaceTrac knew of the ongoing leak, there is no basis to conclude that RaceTrac failed to exercise reasonable care to protect its patrons.

Here, construing all facts and inferences in favor of Plaintiff as the nonmoving party, Plaintiff's failure to prove the first and third elements of the additional requirements of La. R.S. 9:2800.6(B) is "fatal to the claimant's cause of action."[206]  Thus, summary judgment is warranted.

## III.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment[207] is GRANTED, and Plaintiff's suit is hereby DISMISSED WITH PREJUDICE.


**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 17th day of _____September_____, 2025.


_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[205] *Id.* at pp. 109-10.
[206] *White*, 699 So. 2d at 1086; *see also Bertaut*, 209 So. 3d at 356.
[207] Rec. Doc. 12.